RECEIVED

MAR 2 3 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

---

| | |
|---|---|
| JESSIE L. WADE | CIVIL ACTION NO. 10-799 |
| -vs- | JUDGE DRELL |
| SHIVANI NEGI, et al. | MAGISTRATE JUDGE KIRK |

---

# R U L I N G

## I.     Introduction and Background

Before the court is a Motion to Dismiss (Doc. 22) filed by Dr. Shivani Negi, Dr. Hollis Reed, Barbara Watkins, Eric K. Shineski, and the United States of America (collectively "Defendants").For the foregoing reasons, Defendants' motion is GRANTED.

This and the related cases[1] arise from dissatisfaction for services rendered at the Alexandria Veterans Affairs Medical Center in Alexandria, Louisiana ("Alexandria VA"). Plaintiff's pleadings contain numerous allegations of misconduct against Dr. Negi, Alexandria VA hospital administrators Barbara Watkins and Dr. Hollis Reed, and the United States. In essence, Plaintiff alleges Dr. Negi did not properly treat

---

[1] The following individuals have filed suit against the same above-named Defendants based on similar causes of action: Floyd Hamilton, III (09-860); Bertha Hamilton (10-664); Jessie Gray, Jr., et al (09-2105), Dennis M. Egelston (10-0793), Debi Tullis Bell (10-0794), Johnny W. Fitt (10-0795), Rogetta T. Odhams  (10-0798), Jessie L. Wade (10-0799), Carolyn A. Davis (10-0800), Lavelle T. Tullis (10-0807), and Ruth L. Johnson (10-0832).

Plaintiff's son, Michael Joseph Sampson, and the other Defendants lied, in one way or another, in order to "cover up" Dr. Negi's actions.[2]

By Ruling and Order dated March 31, 2011 (Doc. 19), in attempting carefully to analyze the suits filed by this plaintiff and plaintiffs in related cases, we determined three areas of claims potentially still existed and remained viable: (1) potential medical malpractice with all of its permutations: (2) claims under Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971) (so called "Bivens actions"); and (3) violations of 38 U.S.C. § 1151 relating to eligibility for veterans' benefits. Based on these remaining claims, Defendants filed the present motion to dismiss and Plaintiff has filed no opposition.

II.  **Law and Analysis**

A.  **Federal Rule of Civil Procedure Rule 12(b)(1)**

Lack of subject matter jurisdiction may be raised as a defense by a party. Fed. R. Civ. Proc. R. 12(b)(1). If the court determines at any time that it lacks subject matter jurisdiction, the court *must* dismiss the action. Id. at (h)(3) (emphasis added). Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for lack of subject matter jurisdiction. When considering a Rule 12(b)(1) jurisdiction motion, however, the Court must "'view all the facts in a light most favorable to the plaintiff.'" Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237-38 (5th Cir. 2009) (quoting Ginter *ex rel.* Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 441 (5th Cir. 2008)).

---

[2]  We understand Plaintiff's claims to be wrongful death and survival actions in accordance with La. Civ. Code Arts. 2315.1 & 2315.2. See Rhyne v. Henderson County, 973 F. 2d 386 (5th Cir. 1992) (applying state law survival statute to federal civil rights claim).

Generally, when the complaint states a "cognizable federal claim, dismissal for want of jurisdiction is disfavored as a matter of policy" and "'is only proper in the case of a frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or which is clearly foreclosed by a prior Supreme Court decision.'" Young v. Hosemann, 598 F.3d 184, 188 (5th Cir. 2010) (quoting Bell v. Health-Mor, 549 F.2d 342, 344 (5th Cir. 1977)). Nonetheless, the party asserting jurisdiction bears the burden of proof on a motion to dismiss. Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009).

B.     Medical Malpractice Claim

Defendants correctly argue a medical malpractice claim against the federal government falls under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 2671, *et seq.* Furnishing notice is a jurisdictional prerequisite to filing suit under the FTCA. A claimant gives proper notice within the meaning of 28 U.S.C. § 2675(a) only when the agency obtains sufficient written information to begin investigating and the claimant places a value on his claim. A plaintiff waives his claim if he fails to (1) notify the agency in writing about his claim within two years after the claim accrues, or (2) file suit within six months after the agency denies his claim. 28 U.S.C. § 2401(b); Cook v. United States, 978 F.2d 164, 165–66 (5th Cir. 1992).

There are no allegations within the complaint or amended complaint or any subsequent filing by Plaintiff which indicate or show she filed an administrative complaint with the proper federal agency, the Department of Veterans Affairs, prior to filing this suit. In addition, Defendants have attached to their motion a declaration that a search of the VA computer system revealed no administrative malpractice

3

claim from Jessie Wade (or anyone else) regarding Michael Joseph Sampson's care at the Alexandria VA hospital. (Doc. 22-2). Because Plaintiff failed to exhaust her FTCA administrative remedy, namely her medical malpractice claims, this Court lacks jurisdiction over those claims, therefore the judicial claims must be dismissed with prejudice.

C.     38 U.S.C. § 1151 Benefits

Similarly, we lack subject matter jurisdiction for any claim Plaintiff may have for benefits pursuant to 38 U.S.C. § 1151 because of Plaintiff's failure to comply with necessary administrative procedure. Those claims for veterans benefits must be determined by the Department of Veterans Affairs. With certain exceptions inapplicable in this instance, 38 U.S.C. § 511 provides:

> The Secretary [of Veterans Affairs] shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

Accordingly, we are without jurisdiction to entertain any such claim. Further, even if the VA had made a determination regarding compensation, the Veterans Judicial Review Act, 38 U.S.C. § 7251, *et seq.*, precludes federal district court review of individual benefit determinations. Zuspann v. Brown, 60 F.3d 1156, 1158 (5th Cir. 1995), *cert. denied* 516 U.S. 1111 (1996). For these reasons, any claims filed pursuant to 38 U.S.C. § 1151 relating to eligibility for veterans' benefits must be dismissed with prejudice.

4

D.    Bivens Claims

In order to sustain her Bivens action, Plaintiff "must first demonstrate that [her] constitutional rights have been violated." Garcia v. United States, 666 F.2d 960, 962 (5th Cir. 1982) (citing Davis v. Passman, 442 U.S. 228, 248 (1979)). Plaintiff insists "Dr. Negi forced [her] son to lay in pain and suffering without any type of treatment" and "basically let him lay there and rot." (Exhibit H to Doc. 6-2 at p. 2). Accompanied by Plaintiff's factual assertions concerning her son's mistreatment by Dr. Negi, we construe this to be an alleged violation of Plaintiff's son's substantive due process rights by federal actors in violation of the Fifth Amendment.

The Fifth Circuit has recognized the "right to be free of state-occasioned[3] damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." Doe v. Taylor Independent Sch. Dist., 15 F.3d 443 (5th Cir. 1994).[4] The Supreme Court in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189(1989) recognized the relationship between the Fifth and Fourteenth Amendments as follows: "Like its counterpart in the Fifth Amendment, the Due Process Clause of the Fourteenth Amendment was intended to prevent government 'from abusing [its] power, or employing it as an instrument of

_____

[3]  In this phrase we use the generic term "state" to mean government in general, not a specific state.

[4]  In so noting, the Fifth Circuit cited Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981) which was implicitly overruled by the Supreme Court's decision in DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189 (1989). In DeShaney, the Court determined "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by *private* actors. Id. at 195 (emphasis added). The Fifth Circuit in Doe confronted this issue and determined DeShaney did not overrule the existence of the bodily integrity substantive due process right. Doe, 15 F.3d at 452 n.3.

5

oppression.'" Id. at 196 (quoting Davidson v. Cannon, 474 U.S. 344, 348 (1986)) (brackets in original). Accordingly, the Fifth Amendment provides due process protection for the bodily integrity of citizens from harm imposed by federal actors.

If true, Plaintiff's factual assertions of deliberate mistreatment of patients as a harm to her son's bodily integrity inflicted by federal actors potentially violates the Due Process clause of the Fifth Amendment; thus, she has stated a claim as required to proceed under Bivens, contrary to Defendants' argument.

We are required to look "to state law to determine the applicable statute of limitations for *Bivens* actions." Gaspard v. United States, 713 F.2d 1097, 1102 n.11 (5th Cir. 1983) (italics in original) (citations omitted). In this situation, the acts giving rise to Plaintiff's claim are, by law, delictual in nature and are governed by a liberative prescription of one year in accordance with Louisiana Civil Code Article 3492. Hawkins v. McHugh, 46 F.3d 10, 12 (5th Cir. 1995). As with Section 1983 actions, the prescriptive period for a Bivens claim beings to run "the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995) (quotations and citations omitted). In the case *sub judice*, we examine the record to determine when Plaintiff had "either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." Id.

We are certainly saddened and sympathetic with Mrs. Wade because of the unfortunate loss of her son. Still, our analysis is required to be based upon applicable

6

legal principles and not sympathy. While we might like to handle the matter differently, we cannot. We thus turn to the final analysis.

Plaintiff's suit was filed April 20, 2010; therefore, any action against Defendants alleged to have occurred prior to April 20, 2009 would be prescribed and time barred. According to information contained in the record, the last act of alleged mistreatment by Dr. Negi to Plaintiff's son occurred on September 24, 2006. Plaintiff asserts she refused to sign a Do Not Resuscitate ("DNR") Order for her son, and, as a result, Dr. Negi intentionally did not provide proper treatment for her son's multiple medical conditions. Plaintiff's claim accrued when she became aware she and her son had suffered an injury, i.e., upon the death of her son on October 3, 2006. At latest, suit would have to have been filed on or before October 3, 2007; it was not filed until April 20, 2010. Plaintiff's claims against the additional defendants all arise from the alleged mistreatment by Dr. Negi. Plaintiff did not file suit within one year of the accrual of her claim, and her claims have prescribed as a matter of law over which this Court has no control. For this reason, we find Defendants' Motion to Dismiss must be **GRANTED** based on Plaintiff's not having filed suit within the one year prescriptive period. A separate judgment in accord with this ruling will be entered.

SIGNED on this 23RD day of March, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE